In re Pauline M. EWALD, Debtor.

Pauline M. Ewald, Plaintiff,

v.

National City Mortgage Co. & Samuel
I. White, P.C., Defendants.

No. 01–61052.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 2, 2002.

Brett A. Zwerdling, Zwerdling, Opple-
man & Uvanni, Richmond, VA, for debtor.

David Sutelan, Troutman Sanders Mays
& Valentine LLP, Norfolk, VA, for Nation-
al City Mortgage Co.

Robert E. Hyman, Richmond, VA,
Chapter 13 Trustee.

### MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

Final hearing was held October 24, 2001,
on defendant, National City Mortgage

Company's, (NCMC) motion to abstain or remand[1] and objection to confirmation of amended plan. Preliminary hearing was held on same day on NCMC's motion for relief from the automatic stay of 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy Procedure 4001(a) and 9014 to permit NCMC to continue with the litigation pending in state court and obtain a final adjudication of the claims styled, *Pauline M. Ewald v. National City Mortgage Co.*, Law No. CL01–133 and *National City Mortgage Co. v. Pauline M. Ewald*, Chancery No. 456–98, both pending in the Hanover County circuit court.

At conclusion of hearings, the court took the matters under advisement. For the reasons stated below, this court will sustain defendant's objection to confirmation of amended plan and grant the motion for relief from stay.

### Findings of Fact.

Debtor filed this chapter 13 petition on June 21, 2001. NCMC, successor by merger with Integra Mortgage Company, is a creditor holding a lien on land and a home of purported historical interest in Hanover County, Virginia, and holds an adjustable rate construction/permanent

first mortgage loan on the property in the amount of $337,500.00.[2] The note dated October 28, 1994, is secured by a deed of trust on the property[3] and was due and payable in monthly installments. Around September 10, 1997, debtor defaulted under the terms of the note, and NCMC scheduled its first attempted foreclosure on the property.[4]

Debtor filed her first Chapter 13 petition, Case No. 98–32193, on March 24, 1998, and it was dismissed on May 7, 1998, for debtor's failure to file schedules and plan. On July 21, 1998, after trustee's second scheduled foreclosure sale of the property, debtor filed a second chapter 13 petition, Case No. 98–35366, that was dismissed on August 19, 1998, for failure to file schedules and plan. On June 22, 2001, a third foreclosure sale was scheduled; however, on the eve of that hearing, debtor filed her third and present petition.

### NCMC's Motion for Relief from Stay

On July 20, NCMC filed its motion for relief from the automatic stay of 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(d) and Federal Rules of Bankruptcy Procedure 4001(a) and 9014 to permit NCMC to continue with the litigation pending in state court and obtain a final adjudication

---

1. On July 6, 2001, debtor filed adversary proceeding number 01–6029 to determine a claim or cause of action removed to a bankruptcy court. On July 10, debtor filed a notice of removal and removed actions pending in the Circuit Court of Hanover County, Virginia, to the bankruptcy court. On July 20, 2001, NCMC filed a motion to abstain or remand; however, this issue has been rendered moot by notification from debtor's counsel that debtor will withdraw her complaint, adversary proceeding number 01–6029.

2. As of April 30, 2001, NCMC claims it was owed $349,210.90 on its claim, which is the subject of its cross-bill against debtor now pending in state court.

3. Although debtor admits there is a valid deed of trust, debtor disputes NCMC's status as a secured creditor asserting that the deed of trust instrument is fraudulent and that NCMC breached the underlying security agreement, rendering its claim unenforceable. The court makes no judgment at this time as to whether NCMC is a secured creditor or the validity of the deed of trust.

4. On September 10, 1997, NCMC notified debtor of her default under the terms of the note, and the trustee under the deed of trust, Samuel I. White, P.C., scheduled a foreclosure sale of the property.

of the claims styled, *Pauline M. Ewald v. National City Mortgage Co.*, Law No. CL01–133 and *National City Mortgage Co. v. Pauline M. Ewald*, Chancery No. 456–98, both pending in the Hanover County circuit court.

Debtor filed an answer to NCMC's motion for relief from stay stating that: 1) NCMC breached the underlying security agreement rendering their claim unenforceable, 2) any purported liens by NCMC are valueless, 3) the deed of trust instrument is fraudulent, and 4) that NCMC is not a secured creditor.[5]

Debtor has been involved in state court litigation with NCMC in the Circuit Court of Hanover County, Virginia, over a period of almost three years resulting in various court rulings on the validity and nature of the claims asserted by NCMC and debtor.

On October 8, 1998, six days prior to the third scheduled foreclosure sale date, debtor filed her original bill of complaint for injunctive relief and declaratory judgment styled *Pauline M. Ewald v. National City Mortgage Co.* in the Hanover County Circuit Court alleging breach of contract claim and seeking injunctive relief against NCMC and the trustee. On March 1, 2001, debtor filed an amended complaint and motion for judgment alleging: 1) breach of loan agreement, 2) common law

and statutory conspiracy 3) breach of fiduciary duty, 4) fraud, 5) trespass, and 6) intentional infliction of emotional distress.

By letter opinion dated April 4, 2001 and order entered on April 25, 2001, Hanover Circuit Court 1) sustained demurrers and special plea of NCMC, 2) dismissed with prejudice debtor's claims against the trustee and NCMC on grounds of expiration of periods of limitation, except for her original claims of breach of contract, intentional infliction of emotional distress, compensatory and punitive damages and for injunctive relief, 3) granted debtor leave to file a further amended pleading within twenty-one days from April 10, 2001, provided that such amended pleading be limited to the claims alleged or referred to in the original bill of complaint and 4) denied debtor's motion to file the "second amended complaint and motion for judgment." On May 8, 2001, debtor filed an amended motion for judgment;[6] however, further hearing on this case was stayed by debtor's filing of this bankruptcy petition.

On March 19, 2001, NCMC filed a cross-bill against debtor styled *National City Mortgage Co. v. Pauline M. Ewald* pursuant to Va.Code § 8.01–28 seeking judgment against debtor for all amounts due NCMC on the mortgage note and other loan documents.[7] By letter opinion dated

---

**5.** Debtor also asserts that the previous rulings of the circuit court were procedural in nature, rather than substantive; however, this goes to the issue of removal to this court, which is not at issue in this opinion.

**6.** Debtor filed this motion for judgment on the law side of the Circuit Court, Law No. CL 01–133, to dissolve the temporary injunction entered October 13, 1998, and alleging breach of contract and intentional infliction of emotional distress.

**7.** On April 9, 2001, debtor filed an unsworn pleading entitled Plaintiff/Cross Defendant's Answer and Grounds of Defense. On April 13, 2001, NCMC filed its Second Motion to

Strike Debtor's Answer. During a hearing on NCMC's second motion to strike, the circuit court ruled that debtor was required to execute and swear to the truth of allegations contained in her answer to the cross fill and allowed debtor until April 26, 2001, to present a sworn answer.

On April 26, 2001, debtor filed plaintiff/cross defendant's answer and grounds of defense, a motion for reconsideration and clarification, a demurrer and motion craving oyer. Because debtor's answer was still not properly supported by affidavit, NCMC filed a motion to enforce their second motion to strike and motion for entry of judgment by default.

May 18, 2001, the court ordered debtor to file a properly verified answer within 3 days.[8] Second hearing on NCMC's Second Motion to Strike and Motion for Entry of Judgement by Default was scheduled for June 22, 2001, but was stayed by debtor's present petition.

### NCMC's Objection to Confirmation of Plan

Debtor filed her original chapter 13 plan in the instant case on July 6, 2001. On August 20, 2001, NCMC filed its objection to confirmation of debtor's chapter 13 plan on grounds that 1) the original plan provided no payments to NCMC on its secured claim, 2) the plan indicated that the amounts due NCMC would be offset by damages in a highly speculative pending lawsuit, 3) that funding of the original plan was contingent upon debtor obtaining a favorable ruling in the pending lawsuit, and 4) debtor identifies the property in question as her primary residence, despite the fact that it is only partially restored and debtor has never resided on the property.[9]

In response to the first objection, debtor filed an amended chapter 13 plan on August 28, 2001. On September 27, NCMC filed an objection to confirmation of amended plan asserting that the amended plan cured none of the above mentioned defects as debtor attempts to remedy NCMC's prior objections by: 1) providing that NCMC retain its lien on the property, 2) noting that NCMC's secured claim would be resolved by the pending litigation, 3) providing for adequate protection payments to NCMC and 4) granting NCMC a lien on a cash bond posted in the state court.[10] NCMC also states that the plan failed to provide for payment of NCMC's claim in the event debtor was unsuccessful in her effort to obtain damages from NCMC. On October 9, debtor filed a general admit/deny response to NCMC's objection to confirmation of amended plan.

### Conclusions of Law.
### NCMC's motion for relief from stay

Pursuant to 11 U.S.C. § 362(d)(1), "the court *shall* grant relief from the stay ... for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added).

▮ Since the Bankruptcy Code does not define "for cause," the court must make this determination on case by case basis. *See In re Robinson,* 169 B.R. 356 (E.D.Va.1994). In making this determination, the court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Robbins,* 964 F.2d 342, 345 (4th Cir.1992). The court should evaluate the following factors when determining whether "cause" for relief from the automatic stay has been established when a creditor pursues litigation pending outside the Bankruptcy Court: 1) whether the issues in the pending litigation involve only state law, so the expertise of the Bankruptcy Court is not necessary, 2) whether modifying the stay will promote judicial economy and whether there would be greater interference with

---

**8.** On June 6, 2001, after NCMC's counsel sent a letter requesting the circuit court strike the unverified answer and enter judgment in favor of NCMC, debtor filed a verified answer.

**9.** Objection to confirmation of first plan was sustained on October 3.

**10.** The bond is a cash injunction bond posted pursuant to Virginia Code § 8.01–631, originally in the sum of $10,000.00, and now totaling approximately $13,000.00.

the bankruptcy case if the stay were not lifted because the matters would have to be relitigated in Bankruptcy Court, and 3) whether the estate can be properly protected by a requirement that creditors seek enforcement of any judgment through the Bankruptcy Court. *Id.*

■ Modifying the stay promotes judicial economy and will not interfere with debtor's bankruptcy case as the state court is familiar with the facts and circumstances of the claims asserted as they have been pending there for almost three years. The conclusion of the state court litigation will assist with the administration of debtor's bankruptcy case as the amount of any claim by debtor against NCMC, the validity and priority of NCMC's deed of trust, and the amount of NCMC's claims asserted in its cross-bill against debtor will be certain. The bankruptcy estate will be protected as NCMC must seek enforcement of any judgment through this court.

NCMC has established the necessary elements to obtain relief from stay based on the test laid out in *In re Robbins.* Therefore, this court finds cause to grant relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1).

### Objection to Confirmation of Plan

■ Section 1325(a) of the Bankruptcy Code identifies the necessary elements that must be present for a chapter 13 plan to be confirmed. The plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). There must also be proof "that debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Debtor has the burden to establish that a plan meets the good faith test. *See In re Cushman,* 217 B.R.

470, 475 (Bankr.E.D.Va.1998). Good faith is an " 'elastic' concept that requires a factual determination on a case-by-case basis" and the court must "examine the practical effect of the plan." *Id.* at 475–76.

■ The Fourth Circuit has adopted a "totality of the circumstances" approach when evaluating debtor's good faith. *Solomon v. Cosby,* 67 F.3d 1128, 1134 (4th cir.1995); *Neufeld v. Freeman,* 794 F.2d 149, 152 (4th Cir.1986). This approach requires the examination of the following non-exhaustive list of factors: percentage of proposed repayment to creditors, debtor's financial situation, the period of time over which creditors will be paid, debtor's employment history and prospects, the nature and amount of debtor's unsecured claims, debtor's past bankruptcy filings, debtor's honesty in representing the facts of the case, the nature of debtor's prepetition conduct that gave rise to the debts, whether the debts would be dischargeable in a chapter 7 proceeding, and any unusual or exceptional problems facing debtor. *In re Solomon,* 67 F.3d at 1134; *In re Neufeld,* 794 F.2d at 152.

■ It does not appear that debtor's plan was proposed in good faith. Debtor's amended plan is contingent upon the debtor obtaining a favorable ruling in the state court litigation. Debtor cannot establish that she has the financial ability and resources to fund the litigation against NCMC or, more importantly, that she is likely to be successful in her attempt to obtain damages. Debtor's plan also proposes that the $10,000.00 cash injunction bond posted by her in the circuit court on October 21, 1998, used to secure the injunction entered on October 13, 1998, and included in Debtor's Schedule B, be transferred to an interest bearing checking account to be used as adequate protection.[11]

---

**11.** The bond was posted pursuant to Virginia Code § 8.01–631 and now totals approximately $13,000.00.

This usage is not sanctioned by Virginia law.

 Debtor must also prove ability to make all payments under the plan and to comply with plan. 11 U.S.C. § 1325(a)(6). In evaluating debtor's ability to comply with the plan, the court must consider whether the plan has a "reasonable likelihood of success." *In re Fantasia,* 211 B.R. 420, 423 (1st Cir. BAP 1997). Further, if the plan is too speculative, the court should deny confirmation on the basis that the plan is not feasible. *In re Reines,* 30 B.R. 555, 561 (Bankr.D.N.J. 1983).

In the instant case, debtor cannot prove there is a reasonable likelihood that the amended plan will succeed as it is totally dependent on a favorable lawsuit in both circuit court cases, and debtor has presented no evidence to establish her success in obtaining judgment against NCMC and prevailing as to NCMC's cross-bill. Debtor, therefore, cannot show that she will have no liability for NCMC's claim or that she will recover from NCMC. If debtor is unsuccessful in the circuit court cases, she will be unable to fund the amended plan and make payments on NCMC's claim.

It is also unclear to this court based on the provisions of debtor's plan whether the proposed monthly adequate protection payment of $560.68 per month made for the benefit of NCMC would be paid in addition to debtor's regular plan payments. If the latter is correct, debtor has no ability to make the adequate protection payments as she has no disposable income above the amount paid to the trustee.

Debtor's plan provides for resolution of NCMC's secured claim through a highly speculative lawsuit, includes provisions that violate Virginia law, and provides for unfeasible adequate protection payments; thus, the plan fails to meet the requirements of 11 U.S.C. § § 1325(a)(3) and (a)(6).

A separate order will be entered.

### ORDER

In accordance with the court's separate memorandum opinion also entered today,

**IT IS ORDERED** that NCMC's objection to confirmation of plan is SUSTAINED and that confirmation of the debtor's chapter 13 plan filed July 6, 2001, is DENIED;

**IT IS FURTHER ORDERED** that defendant is hereby granted relief from the automatic stay for cause. Defendant is permitted to continue with the litigation pending in state court and obtain a final adjudication of the claims styled: *Pauline M. Ewald v. National city Mortgage Co.,* Law CL01–133, and *National City Mortgage Co. v. Pauline M. Ewald,* Chancery No. 456–98, pending in the Circuit Court of Hanover County.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to dismiss this chapter 13 case unless within ten days from this order, the debtor takes one of the actions enumerated in Local Bankruptcy Rule 3015–2.